# HILL v. THE UNITED STATES.*

---

CRIMINAL LAW AND PROCEDURE; MURDER; TRIAL; NEW TRIAL.

1. All crimes and criminal procedure known to the common law are still in force in this District, except as otherwise provided. by statute.

2. The definition of murder given in § 798, District of Columbia Code,

---

*Insanity of Accused.*—As to insanity after commission of criminal act, see the presentation of the authorities in editorial note to *Baughn* v. *State,* 38 L. R. A. 577.

namely,—"Whoever, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating, or in attempting to perpetrate, any offense punishable by imprisonment in the penitentiary, kills another,"—is not a new or statutory definition of murder, but is simply the common-law definition of that crime.

3. It is not essential to the validity of an indictment for murder that it charge that the accused was of sound memory and discretion at the time of the commission of the crime.

4. It is not error for the trial court, in a murder trial in which the accused offers no affirmative evidence that he was insane at the time the crime was committed, but rests his case upon the testimony of the prosecution, to interrupt counsel for the accused while urging to the jury that they might lawfully infer that the accused was insane at the time of the homicide from the mere circumstances of the atrocity and publicity attending the commission of the crime charged, and to say that the jury are not at liberty to draw such an inference.

5. Affidavits containing statements of declarations made to the affiants by one convicted of murder, and conversations between them and the convict, unsupported by an affidavit of the convict that he did not know at the time of the trial by whom such declarations could be proved, will not justify the granting of a motion called a motion in arrest of judgment, filed after a motion for a new trial has been overruled and judgment and sentence pronounced.

6. The granting or refusing of a motion for a new trial is within the discretion of the trial court, and its action is not reviewable on appeal.

No. 1322.    Submitted June 5, 1903.    Decided June 25, 1903.

HEARING on an appeal by the defendant from a judgment and sentence of the Supreme Court of the District of Columbia upon the verdict of a jury finding him guilty of murder in the first degree.    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. C. G. Bradshaw* and *Mr. J. C. Welles,* for the appellant:

1. The Code, in defining the crime of murder in the first degree, sets out, as one of the essential elements, that the person committing it must be of sound memory and discretion. Therefore, an omission to allege this ingredient of the offense is fatal.

There is no common-law jurisdiction of crimes in the courts of the United States. Such is the express holding of the United States Supreme Court. *United States* v. *Eaton,* 144 U. S. 677, and cases cited. So that every criminal offense is wholly statutory; and all the authorities agree that, in regard to statutory crimes, all indictments must state all the facts and circumstances which constitute the definition of the offense in the act; and every ingredient of which the offense is composed must be set forth with clearness and certainty; so that the omission of any fact or circumstance necessary to constitute the offense, in an indictment for murder, is necessarily fatal. *United States* v. *Cruikshanks,* 92 U. S. 542; *State* v. *Vevrill,* 54 Me. 408; *Commonwealth* v. *Terry,* 114 Mass. 263; *Foster* v. *State,* 74 Tenn. 213. And no omission in setting forth all the ingredients of an offense can be supplied by evidence or innuendo. The charge must be made directly, and not inferentially or by way of recital. *State* v. *Henderson,* 1 Rich. L. (S. C.) 179; *Pettibone* v. *United States,* 148 U. S. 195. And where a statute inflicts a penalty upon persons of a certain description only, an indictment must aver all the facts necessary to show that the defendant was a person of that description at the time of committing the act. *United States* v. *McCormick,* 1 Cranch C. C. 593; *State* v. *Sloan,* 67 N. C. 357. See also *Koster* v. *People,* 8 Mich 431; *State* v. *Wright,* 52 Ind. 307; *United States* v. *Dickey,* 1 Morris, 412. Inasmuch as the crime of murder is, by the Code, divided into three degrees, the indictment must clearly define which degree a defendant is to be tried for, so as to afford him requisite notice thereof.

2. A necessary ingredient in the crime of murder in the first degree is premeditation. Of this premeditation the evidence adduced in this case shows no trace. Under the Code of this District, as well as elsewhere, proof of the fact of killing does not raise a presumption of premeditation such as makes the offense murder in the first degree, and the use of a deadly weapon only raises a presumption of malice, and not of premeditation and design. Where the killing has been proved, on a trial for murder, the presumption is that it was done without premedita-

tion, and is murder in the second degree; and, unless this presumption is annulled by the evidence, the jury must acquit the defendant of murder in the first degree. · *Stokes* v. *People,* 53 N. Y. 164; *State of North Carolina* v. *Gosnell,* 74 Fed. 734; *State* v. *Adin,* 7 Ohio Dec. 25. Beyond the bare fact of killing, there is no evidence in this case to show premeditation, or to show the motive with which the defendant went to the home of his wife on the fatal evening of the tragedy. If it is a rational act rationally done, it is strong evidence of a strong mind; if it is an irrational act, or done in an irrational manner, it is regarded as evidence of insanity. *Anderson* v. *State,* 43 Conn. 672.

3. The court below had no right whatever to arrest the argument of counsel to interject an instruction to the jury that "no evidence had been offered even tending to show that the defendant was insane." What the facts in evidence tended to prove and the weight and sufficiency thereof belonged exclusively to the jury to determine; and counsel had a right to draw the inference of a want of sound memory and discretion from the evidence adduced by the prosecution; that is, to show that the facts in evidence, when considered together, justified that inference. *United States* v. *Davis,* 160 U. S. 469.

4. The court erred in refusing the prayers of the defendant for instructions to the jury [for prayers, see footnote on p. 404, REPORTER]. Prayer No. 3 was declined because the court declared that there was no evidence of good character; whereas, the testimony of James H. Bradford was directly on that point. The correctness of the prayer in law is amply shown by the authorities: *People* v. *Ashe,* 44 Cal. 288; *United States* v. *Gunnell,* 5 Mackey, 196; *Kistler* v. *State,* 54 Ind. 400; *People* v. *Van Dam,* 107 Mich. 425; *Stewart* v. *State,* 22 Ohio St. 477; *People* v. *Pollock,* 51 Hun (N. Y.) 613. Prayer No. 4 was also summarily dismissed for a like reason. Its correctness in law is likewise well settled. *Baker* v. *State,* N. J. Law, 45; *State* v. *Northrup,* 48 Ia. 583; *Hanney* v. *Commonwealth,* 116 Pa. St. 322; *Heine* v. *Commonwealth,* 91 Pa. St. 145. Prayer No. 6, as a definition of insanity, was refused. It is sustained by authority, however. *Waters* v. *Insurance Co.* 2 Fed. Rep. 894;

*Seamen's, etc.,* v. *Hopper,* 33 N. Y. 619; *Riggs* v. *Society,* 95 N. Y. 503. Prayer No. 8 merely affirms that all the ingredients of a crime must be proved. This the court negatived, although we submit whether it is not strictly correct in law and applicable to the case as herein is previously shown. Prayer No. 9 was declined, although the most solemn confession of one accused of murder in the first degree, even made in open court, is not received,—that is, such a person is not permitted to plead guilty. To refuse this prayer was manifestly error, although, it is true, there is no actual confession in this case of a premeditated murder, and the source of the so-called confession is, of necessity, very suspicious. Prayer No. 12 surely ought to have been granted, containing, as it does, an elementary principle of law strictly applicable. .

5. The record shows the absence of defendant during important proceedings in his case. An accused person is entitled, as a privilege which he himself cannot waive, to be present at every stage of the proceedings against him. The record herein notes his presence in arraignment, in the hearing on the motion to quash the indictment, and the trial; also in proceedings on motion for arrest of judgment and new trial, and on sentence and appeal; but the proceedings on the motion to vacate the judgment occurred wholly in his absence, which was error, such proceedings being of vital interest.

6. The court erred in refusing to vacate the judgment on the ground of newly discovered evidence. It is a universal rule of law that a discovery of important evidence justifies and requires a new trial, either in a civil or criminal cause, and especially in a case where the loss of life or liberty is involved. And, in addition to this, there is a special rule of the supreme court of the District, namely, rule 79, page 30, of the rules, requiring this.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, and *Mr. Thomas C. Taylor,* Assistant, for the United States.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The appellant was indicted for the murder of his wife, Carrie Theoda Hill, and was tried and convicted of murder in the ·first degree, and was thereupon sentenced to be hung, by the supreme court of this District; and he has taken this appeal.

By the indictment it is charged that the accused, on the 8th day of November, 1902, with force and arms, at the District of Columbia, upon a certain Carrie Theoda Hill feloniously, purposely, and of his deliberate and premeditated malice did make an assault, and her the said Carrie Theoda Hill then and there feloniously, purposely, and of his deliberate and premeditated malice did kill and murder; against the form of the statute in such case made and provided, and against the peace and government of the United States.

A motion to quash the indictment was entered by the accused, upon the ground that, the indictment being for murder, it was not alleged therein that the accused, at the time of committing the crime charged, was of *sound memory and discretion,* according to the definition of murder contained in section 798 of the Code of law of this District, which went into operation from and after the 1st day of January, 1902. The motion was overruled, and the accused excepted to the ruling.

The section of the Code referred to declares that "whoever, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating, or in attempting to perpetrate, any offense punishable by imprisonment in the penitentiary, kills another, is guilty of murder in the first degree."

On the part of the accused it is contended that, as the United States has no common-law criminal jurisdiction, and no power over crimes at the common law except such as and in the manner provided by statute, therefore, all the constituents that enter into and are essential to constitute the crime of murder, as defined by the section 798 of the Code above quoted, should be averred on the face of the indictment, in order to make out the statutory offense of murder; and because of the omission of

such averment the indictment is fatally defective and should be quashed.

But it is overlooked that the common law of crimes as it existed in the State of Maryland in 1801 was declared to be in force in this District by the act of Congress of February 27, 1801, and that it has remained in force here ever since, as part of the legal system of the District. By express provision, it is retained and made to co-exist with the provisions of the Code in all respects, except where it has been repealed or modified by statutory provision. The common-law procedure, in all matters relating to crime, was in force at the date of the cession of this District by the State of Maryland, and still continues in force here in all cases except where special provision is made by statute to the exclusion of the common-law procedure. All crimes, therefore, and their appropriate and settled forms of procedure for enforcement, known to the common law, except as otherwise provided by statute, are still in force in this District. Such has been the recognized and adopted view of the subject, both by the courts and the Congress of the United States, ever since the organization of the District as the seat of government. Hence, the act of Congress of March 2, 1831 (4 Stat. at L. 448, chap. 37), known as the penal or crimes act, recognized preexisting crimes and prescribed the punishment therefor, but did not undertake to define and declare such offenses *ab initio*. By § 14 of that act it was provided that all capital felonies and crimes in the District of Columbia, not therein specially provided for, except murder, treason, and piracy, should thereafter be punished by imprisonment in the penitentiary; and by § 15 it was declared that every other felony, misdemeanor, or offense not provided for by that act might and should be punished as theretofore, except, etc.; and by § 16 it was declared that *all definitions and descriptions of crime,* etc., and every other matter not provided for in that act, should be and remain as theretofore. And there has been no subsequent legislation of Congress that has made a different provision in respect to the definition and essential elements of crime, nor prescribed any new forms of procedure for the crimes referred to in the

act of 1831, different from such as obtained and has been adopted in practice under the common law.

The definition of murder as given in § 798 of the Code is the common-law definition of that crime, as we find it in the 4th book of Blackstone's Commentaries, page 195, transcribed from the 3d Institute of Coke, page 47. It is not, therefore, a new or statutory definition of murder, but simply the common-law definition of that crime. The indictment here is in the regular and long approved common-law form, and the court below was clearly right in refusing to quash it for the reason assigned in the motion. Indeed, it was not necessary, in any view of the case, to charge that the accused was of sound mind and discretion, as essential to the validity of the indictment. 2 Bishop, Crim. Proc. § 669.

Upon the motion to quash being overruled, the accused pleaded not guilty, and the trial was thereupon had, and the verdict of guilty rendered.

It was shown in proof that, on the 8th day of November, 1902, at No. 315 Missouri avenue, northwest, in the city of Washington, Carrie Theoda Hill, the wife of the accused, received mortal pistol shot wounds from the hands of the accused, of which she died on the 12th day of November, 1902, at a hospital in this city. That the accused, about one week prior to the shooting of his wife, voluntarily left her home at No. 315 Missouri avenue, where the accused and deceased had been living together; and at the time the accused left he declared that he was leaving his wife permanently, and that he did not intend ever to return. That after this separation, on Sunday before the shooting of his wife, the accused declared that he had left his wife for good, applying to her the opprobrious epithets of a "damned whore and bitch:" That he purchased the pistol with which he shot the deceased about two days before the shooting, and that, after his arrest, he declared that he had purchased the pistol for the purpose of shooting his wife. That on the evening of the shooting the accused entered the house where his wife lived, unobserved, about 6 o'clock, and just after dark, and that his presence in the house was not known until he suddenly emerged from a dark hall and

entered the dining room, where the deceased and several persons were seated at the table: That on entering the dining room, the accused said, speaking in his ordinary tone of voice, "Good evening, ladies and gentlemen:" that he then walked around the table, and, approaching the deceased, his wife, he said to her, "Hello, Carrie," and thereupon immediately fired three shots at her, each shot taking effect upon her body, inflicting mortal wounds: that the accused then turned to Bertha A. Marsden, a thirteen-year-old daughter of his wife by a former husband, and fired one shot at her, which did not hit her, but struck the wall close to her head; that the accused then left the house by way of the back door, and was soon thereafter apprehended in a shed in the rear of the adjoining house.

The prosecution further proved that the accused, when arrested, was asked where the pistol was, and his reply to the officer was, "There it is,"—the pistol was lying on the ground near by, and he then and there said to the officer, "That is what I killed the bitch with, and if I did not kill her I made the saddest mistake of my life." That the accused was immediately brought out through the house to the front of the same, and that he then and there said: "Here am I,—look at me; I did it, and if I did not finish her it is the saddest thing of my life." It was also proved that the accused and his wife were married about six years prior to the date of the shooting, and that they had not lived happily together. That the accused on various occasions cursed her and knocked her about; that on one occasion he attempted to cut the throat of the deceased, and had kicked her in the side and thereby caused a serious tumor; and that, on another occasion, a police officer was called to the house to protect the deceased, and while there he saw the accused assault the deceased. That the accused for several years prior to the shooting had manifested great and repeated cruelty toward his wife; that since their marriage they had lived together part of the time, and at other times the accused had lived apart from the deceased, and as an inmate of the Soldier's Home, at Hampton, Virginia. That the accused had returned to live with the deceased on the day before Decoration Day, 1902, and had re-

mained with his wife down to about one week or ten days before
the tragedy, when he voluntarily went away. That the accused
had previously been arrested for knocking the deceased down,
and for choking and cursing her. Upon some of these occasions
of violence and abuse of his wife the accused is described as hav-
ing been drinking.

Upon the close of the evidence for the prosecution, there was
but a single witness called for the defense, and that witness was
James H. Bradford, who testified that he became acquainted
with the accused about seven years prior to the time of the shoot-
ing, and knew him for about two years succeeding his first ac-
quaintance with him; and that during that time the accused was
of a quiet and peaceful disposition; but that witness had no
knowledge of the accused during the five years preceding the
shooting of the wife of the accused. This was all the evidence
given on the part of the defense.

After the evidence was all in, there were thirteen prayers, or
general propositions, for instruction to the jury, offered on the
part of the defense. Some of these prayers were granted as
presented, and some of them modified by the court, and granted
as modified. But prayers numbered 3, 4, 6, 8, 9, 10, 11, 12, and
13 were refused by the court in the forms and terms as offered,
and an exception to such refusal was noted.* At the conclusion

---

*The following were the prayers offered on behalf of the defendant:

1. That the law presumes the defendant to be innocent of the crime
charged against him in the indictment until he is proved guilty by the evi-
dence beyond a reasonable doubt, and this presumption of the law continues
throughout the trial of the cause, step by step, and the jury should en-
deavor to reconcile all the evidence with this presumption. (Granted.)

2. That the Code of the District of Columbia divides the crime of mur-
der into degrees, namely, murder in the first degree, murder in the second
degree, and manslaughter. Under such statute, proof of the fact of inten-
tional killing merely does not raise a presumption of premeditation such as
makes the offense murder in the first degree. And the use of a deadly weapon
only raises a presumption of malice, and not of premeditation and design.
[Where the killing has been proved on a trial for murder, the presumption
is that it was done without premeditation, and is murder in the second de-
gree. And, unless this presumption is annulled by the evidence, the jury
must acquit the defendant of murder in the first degree.] (Granted as
modified, the modification consisting of striking out that portion in brack-
ets.)

3. That in the consideration of a verdict, the jury should bear in mind
that evidence of good character is always a fact to be weighed, whether
the case is doubtful or not. Character is entitled to consideration in every

of the argument, however, the court, in a very full and clear charge to the jury, covered all the grounds of the defense, and in a manner in every respect as favorable to the accused as he in justice could request.

In the course of the argument to the jury, one of the counsel for the defense was contending that the jury had a right to determine that the accused was insane at the time of the homicide, from the mere circumstance of the extreme atrocity and publicity of the homicide. Whereupon the court interrupting, advised counsel so arguing that the jury could not predicate the insanity of the accused upon the mere circumstance of atrocity and publicity attending the tragedy. The counsel thereupon discontinued his address to the jury, but reserved an exception to the

---

criminal cause, and it is for the jury to assign its value upon a comparison of all the facts and circumstances which envelop the transaction. And evidence of good character is to be taken into consideration by the jury under all circumstances. And it is admissible in order to create a reasonable doubt. And when it does this the defendant must be acquitted. (Rejected on the ground that no evidence of good character was offered.)

4. In all criminal trials it is the right of the accused to have all the relevant testimony, including that relating to his good character, considered by the jury, and if on such consideration there exists a reasonable doubt of his guilt, even though that doubt be engendered by his good character, he is entitled to an acquittal. And it is for the jury to determine the weight of evidence tending to establish the previous good character of the defendant, as they would that of any other fact in evidence. Such evidence is to be regarded as evidence of a substantial character like any other fact tending to establish defendant's innocence. Such evidence is not a mere makeshift, but is positive, and may of itself, by the creation of a reasonable doubt, produce an acquittal. (Rejected.)

5. That to constitute murder in the second degree under the Code of the District of Columbia, it is necessary to prove malice aforethought. The definition of malice aforethought is malice thought of beforehand. And, unless this is proved beyond a reasonable doubt, the defendant must be acquitted of murder in the second degree. (Granted.)

6. In law, a man is insane when he "is not capable of understanding (1) that a design is unlawful, or that an act is morally wrong, or, (2) understanding this, when he is unable to control his conduct in the light of such knowledge. When a person is moved to the commission of an unlawful act by an insane impulse, controlling his will and judgment, it is wholly immaterial upon what subject, so that the insane impulse leads to the commission of the act. If a person, persistently believing supposed facts, which have no real existence, against all evidence and probability, and conducting himself upon the assumption, is, so far as such facts are concerned, under an insane delusion. If such delusion exists upon one subject, the person, as to that, is of unsound mind, although in regard to other subjects he may reason and act intelligently. (Rejected.)

7. A reasonable doubt arising out of the whole evidence as to the defend-

interference of the court. Another counsel for the accused then proceeded to address the jury in defense.

That the court was right in thus arresting the contention of counsel that the jury might lawfully infer the existence of insanity of the accused at the time of the homicide from the mere circumstances of atrocity and publicity attending the commission of the crime charged would seem to be too clear to admit of serious question. If such contention could be tolerated, and be allowed to be urged to induce a jury to acquit a party accused of crime, then every reckless and desperate criminal could raise an argument in support of the defense of insanity and for his acquittal, by simply committing his crime with all the atrocious cruelty that he could employ, and with as much publicity as possible. Such a contention is simply horrible to contemplate. Where there is proof in support of the defense

ant's insanity at the time of the commission of the act entitles him to an acquittal. (Granted.)

8. That every ingredient of the definition of an offense in the statute must be proved beyond a reasonable doubt. Otherwise the defendant cannot be convicted of a crime charged, but must be acquitted. And, under the Code of the District of Columbia, the prosecution must prove beyond a reasonable doubt that the defendant, being charged with murder in the first degree, did purposely, deliberately, and with premeditation commit the offense; and must also show affirmatively, by competent evidence, that the defendant was at the time of the act "of sound memory and discretion" beyond a reasonable doubt; otherwise the jury must acquit the defendant. (Rejected.)

9. That any admission or confession made by an accused person, who is under arrest and in confinement, is evidence of the weakest kind; and is to be closely scrutinized by the jury, and is not to be received as conclusive in itself, unsupported by corroborative evidence. And it is for the jury to determine whether any confession has been made. (Rejected.)

10. The jury is instructed that on the testimony in this case it cannot find the defendant guilty of murder in the first degree. (Rejected.) ·

11. The jury is instructed that on the testimony in this case it can render but one of three verdicts, namely, guilty of murder in the second degree, guilty of manslaughter or not guilty, (Rejected.)

12. Crime is abnormal, and when a crime has been committed it necessarily follows that there is some abnormal cause for it. This may be a depraved and wicked heart, or it may be a total or partial derangement of the powers of the intellect. In any case of trial for the commission of crime it is for the jury to determine from all the facts in evidence what was the efficient cause of the act charged against the defendant, and whether the defendant was of sound memory and discretion in a case of trial for murder in the first degree. (Rejected.)

13. Evidence of previous brutal, and cruel treatment will not suffice to establish deliberation and premeditation in a trial for murder in the first degree, but it may be a circumstance for the consideration of the jury as tending to establish such point. (Rejected.)—REPORTER.

of insanity of the party accused, the manner and place of the commission of the crime charged are . often circumstances that may be considered in connection with other proof. But the mere atrocity and publicity of the crime charged could never be allowed as sufficient ground for an inference of insanity to entitle the accused to an acquittal. It was the duty of the justice below to restrain, as he did, the contention that was being urged, and not to allow the jury to be misled by such an argument addressed to them. The judge is not a mere moderator in court to preserve order. His prime function is to secure a fair trial to both the accused and the public represented by the government, according to law. It is as much his duty to prevent the misleading the jury by an improper and inadmissible argument as it is to prevent the misleading them by the introduction and use of improper and illegal evidence. By the use of either means justice would be defeated and a wrong done.

However, in the course of the charge to the jury, the learned justice below expounded very fully the law as to the presumption of innocence of the accused, and as to the principles that apply where the defense of insanity is interposed. We quote from the charge to the jury, as follows:—

"You must be satisfied also, beyond all reasonable doubt, that at the time the defendant so killed his wife he was a person of sound memory and discretion.

"You will bear in mind that the defendant is not only presumed to be innocent, as I have already stated, but he is likewise presumed to be sane, and this presumption continues until some evidence or proof to the contrary shall have been offered, no matter from which side such proof may come, whether from the side of the government or the side of the defense. It follows, therefore, that if you are not satisfied from the evidence beyond a reasonable doubt of these three propositions, it would be your duty to render a verdict of not guilty; or, if, you are satisfied from all the evidence, and beyond a reasonable doubt, of the first two, namely, that Mrs. Hill is dead, and that she came to her death by violence at the hands of the defendant as stated, but you are not satisfied beyond a reasonable doubt

that at the time he killed his wife he was a person of sound memory and discretion, then, in that case it would be your duty to return a verdict of not guilty by reason of insanity. If, on the other hand, you are satisfied from the evidence, and beyond all reasonable doubt, that the defendant at the time and place, and in the manner substantially as charged in the indictment, did kill this woman, and that at the time he killed her he was a person of sound memory and discretion, then it would be your duty to find him guilty, and convict him of such degree of homicide as the evidence in this case, and the law as the court shall define it, may justify.

"Now, as I have said to you, the law presumes that the defendant is sane, and therefore the government may rest its case upon that presumption as a sufficient proof of that fact until a prima facie case of insanity shall have been established, and then it would be the duty of the government to establish the fact of sanity beyond a reasonable doubt. But the law presumes the defendant here was sane at the time he killed his wife, and therefore, the government is not required in the first instance to produce evidence to establish his capacity to commit the crime charged. The jury is authorized to assume at the outset that the accused is mentally responsible for his acts, and, unless from all the evidence a reasonable doubt shall have risen in your minds as to his sanity, you should not acquit him on the ground of insanity. In other words, as the defense has rested its case upon the testimony of the government and the government having introduced no evidence for the purpose of showing either the sanity or insanity of the defendant, but has rested its case upon the presumption of the law, namely, that the defendant was sane at the time the act was committed; and in the absence of any affirmative proof tending to establish the insanity of the defendant,—it would be your duty to proceed to your verdict upon the presumption of the law, as a primary presumption that he is sane."

The court then proceeded to direct the jury, in the event of finding the accused guilty, in respect to the degrees of the crime as defined by the Code. The justice said to them: "Being the

sole judges of the facts, you have the absolute power to fix the degree of the homicide, if you should find that a homicide was committed by the accused. That is to say, if you should find the defendant guilty, you have the power to find him guilty of murder in the first degree, murder in the second degree, or, if there be any evidence in the case to justify it, (the court makes no suggestion to you on that point), you may find him guilty of manslaughter."

The court then proceeded to explain the provisions of the Code in respect to the crimes charged; and the jury were informed that "in order to constitute murder in the first degree, the killing, as you will understand from the evidence I have referred to, must have been done, not only purposely and maliciously, but it must have been done with deliberate and premeditated malice, either express or implied, as I have endeavored to define to you what is meant by malice, both express and implied. But the law speaks of premeditated and deliberate malice; and I therefore invite your attention to the definition of those terms."

The charge in its entirety is very full, and covers all the propositions that could in fairness be presented on the proof in the case; and, as is manifest, the charge left open every ground of defense that could be raised, and that in the most favorable manner to the accused.

The court seems to have had in mind and pursued the reasoning of the decision of the Supreme Court in the case of *Davis* v. *United States,* 160 U. S. 469, 40 L. ed. 499, 16 Sup. Ct. Rep. 353, where the defense of insanity was in fact involved. In that case it was said, in the opinion of the court, that the presumption of law, justified by the general experience of mankind as well as by considerations of public safety, is in favor of sanity. "If that presumption," said the court, "were not indulged, the government would always be under the necessity of adducing affirmative evidence of the sanity of the accused. But a requirement of that character would seriously delay and embarrass the enforcement of the laws against crime, and in most cases be unnecessary. Consequently, the law presumes that everyone charged with crime is sane, and thus supplies in the first in-

.stance the required proof of capacity to commit crime. It authorizes the jury to assume at the outset that the accused is criminally
responsible for his acts. But that is not a conclusive presumption, which the law, upon grounds of public policy, forbids to be
overthrown or impaired by opposing proof. It is a disputable,
or, as it is often designated, a rebuttable, presumption resulting
from the connection ordinarily existing between certain facts,—
such connection not being 'so intimate, nor so nearly universal,
as to render it expedient that it should be absolutely and imperatively presumed to exist in every case, all evidence to the
contrary being rejected; yet it is so general, and so nearly universal, that the law itself, without the aid of a jury, infers the
one fact from the proved existence of the other, in the absence
of all opposing evidence.' 1 Greenl. Ev. § 38. It is therefore
a presumption that is liable to be overcome, or to be so far impaired in a particular case that it cannot be safely or properly
made the basis of action in that case,—especially if the inquiry
involves human life. In a certain sense it may be true that where
the defense is insanity, and where the case made by the prosecution discloses nothing whatever in excuse of extenuation of the
crime charged, *the accused is bound to produce some evidence*
that will impair or weaken the force of the legal presumption
in favor of sanity. But to hold that such presumption must absolutely control the jury until it is overthrown or impaired by
evidence sufficient to *establish the fact of insanity beyond all*
*reasonable doubt,* or to the reasonable satisfaction of the jury,
is in effect to require him to establish his innocence, by proving that he is not guilty of the crime charged."

Again, further on in the opinion, it is said: "If the whole evidence, including that supplied by the presumption of sanity,
does not exclude beyond reasonable doubt the hypothesis of insanity, of which some proof is adduced, the accused is entitled
to an acquittal of the specific offense charged. His guilt cannot
be said to have been proved beyond a reasonable doubt,—his
will and his acts cannot be held to have joined in perpetrating
the murder charged,—if the jury, upon all the evidence, have a
reasonable doubt whether he was legally capable of committing

crime, or (which is the same thing) whether he wilfully, deliberately, unlawfully, and of malice aforethought took the life of the deceased. As the crime of murder involves sufficient capacity to distinguish between right and wrong, the legal interpretation of every verdict of guilty as charged is that the jury believed from all the evidence beyond a reasonable doubt that the accused was guilty, and was therefore responsible, criminally, for his acts. How, then, upon principle or consistency with humanity can a verdict of guilty be properly returned, if the jury entertain a reasonable doubt as to the existence of a fact which is essential to guilt, namely, the capacity in law of the accused to commit that crime ?"

It is certainly true that in many cases of prosecutions for murder the defense of insanity is resorted to and sustained by the evidence of ingenious experts, and plausible arguments of counsel, whose theories are difficult to be met and overcome by the prosecution. Thus, it is matter of common observation, as said by the supreme court in the case just referred to, that crimes of the most atrocious character often go unpunished, and the public safety is thereby endangered. But still, notwithstanding the evil results that may be effected by bad practice in certain cases, the courts are not justified in departing from the settled principles of protection to the accused in trials that affect his life or liberty, in any case. But such protection must be founded in applicable presumptions, or the defense set up be supported by appropriate evidence.

In view of all that was said in the charge to the jury, it is quite unnecessary to go over specifically the propositions presented by the several prayers offered by the accused and which were rejected by the court. They were all disposed of, in effect, by the general charge to the jury.

After verdict there was a motion made in arrest of judgment, but that appears, from the statement in argument, to have been based upon the same ground upon which the motion to quash the indictment was based. It was overruled, and properly so, for the reasons assigned in overruling the former motion.

Several days after the overruling of a motion for a new trial,

and the judgment and sentence entered, there was a motion made, under rule 79 of the lower court, to vacate the judgment, upon the ground of newly discovered evidence; and two affidavits in support of the motion were filed. It is not apparent, however, how the facts stated in these affidavits, supposing them to be true as stated, can be regarded as newly discovered; as the matters referred to consist of declarations and conversations of the accused himself. He does not swear that the things stated were unknown to him; nor does he swear that he did not know, at the time of the trial, by whom such declarations and conversations could be proved. It would simply be the baffling of justice and the result of a solemn trial, to allow the judgment to be disturbed upon any such matter as that stated in these affidavits. But the motion is in its nature and essence a motion for a new trial; and it is well settled that the denial of a motion for a new trial is not the subject of review on appeal. It is matter of discretion in the court below, and therefore not reviewable in an appellate court.

Upon careful review of the entire record, we find nothing of which error can be predicated; and we therefore affirm the judgment; *and it is so ordered.*        *Judgment affirmed.*