[Crim. No. 3725. In Bank.—September 26, 1934.]

THE PEOPLE, Respondent, v. MIKE LAMI, Appellant.

498

No appearance for Appellant.

U. S. Webb, Attorney-General, for Respondent.

WASTE, C. J.—Appellant appeals from a judgment sentencing him to suffer the extreme penalty. The judgment is based upon the verdict of a jury finding him guilty of murder in the first degree without recommendation.

In an information filed by the district attorney of Sacramento County, appellant was charged with having murdered his estranged wife. Upon his arraignment he offered to plead guilty to a charge of manslaughter. To this the district attorney objected, whereupon appellant entered pleas of not guilty and not guilty by reason of insanity. Subsequently and before proceeding to trial appellant expressed

a willingness to plead guilty to a charge of second degree murder. This offer was likewise rejected. Upon the impanelment of the jury and before trial, appellant withdrew his insanity plea. When the evidence was in and it had been fully instructed on the law the jury retired to deliberate upon its verdict. It returned to the courtroom in fifty-five minutes with a verdict finding appellant guilty as charged.

The evidence, which we shall briefly narrate, left no alternative for the jury but to find appellant guilty of murder in the first degree. The autopsy surgeon testified that the body of the deceased bore five lacerations or stab wounds and that she died as the result of hemorrhages from the heart and liver caused by one of these stab wounds.

The nine year old daughter of the deceased and appellant testified that on the day of the homicide she lived with her mother and brother; that at about 6:30 on the morning of April 3, 1933, she was awakened by her mother's screams emanating from the bathroom; that she went to her and found her in the bathtub; that she saw her father in the act of picking something up; that the father immediately left without saying anything, and that she called her brother, who had been sleeping elsewhere in the house.

The deceased's son, and stepson of the appellant, testified that during the month of April, 1933, and for approximately one year prior thereto, his mother and appellant had been separated; that during this period he (the witness) had been living with his mother and sister; that on the evening preceding the homicide he returned from work at about 12:30 o'clock; that his mother prepared food for him; that they retired shortly thereafter; that at that time there was no one in the house but the deceased, his sister and himself; that when summoned to the bathroom by his sister he found his mother there bleeding; that he did not see appellant at that time; and that the police were summoned and upon investigation found a knife under the bathtub. On cross-examination the witness testified that a week or two prior to the homicide the deceased and appellant had quarreled over the former "going with some other man".

Several police officers were called to the stand. One testified that he arrived at the scene of the stabbing at about 7 A. M. and found a fourteen-inch butcher knife with blood on it under the bathtub. Another officer testified that he

went to appellant's place of residence about three hours after the homicide; that as he approached appellant the latter pulled a knife from his clothing and made two futile attempts to stab himself; that appellant stated to him that he had left his room at 3 o'clock on the morning of the homicide and took a butcher knife with him; that he waited until he saw a man leave the deceased's residence; that he later gained entrance to her home and toward morning when she entered the bathroom he stabbed her. A third officer corroborated the testimony of the preceding witness.

A fourth police officer testified that shortly after being taken into custody the appellant freely and voluntarily made a statement to him, received in evidence upon stipulation of appellant's counsel, in which he admitted having surreptitiously entered the deceased's home, having quarreled with her over another man, and having stabbed her.

As additional evidence of motive the prosecution showed that several days prior to the homicide the deceased had the appellant arrested for failure to provide.

In his opening statement to the jury counsel for the defense stated that he did not expect a verdict of not guilty, but hoped for a manslaughter or second degree murder verdict. Appellant thereupon took the stand in his own behalf and again related the quarrel he had with deceased over another man during the course of which he testified he "stuck her". He also testified that he had been drinking immediately prior to the homicide and was a "little drunk". On cross-examination he stated "sure I stabbed her".

In opposition to the defense of intoxication two of the police officers testified that when they arrested appellant within three hours after the homicide they did not smell liquor on his breath, that he did not appear to have been drinking, and that "to all appearances he was sober".

The case was submitted to the jury upon this showing. As we have already indicated, the jury had no alternative under the evidence and the law as expounded to them in the instructions but to find appellant guilty of murder in the first degree. The fact that appellant had previously partaken of intoxicating liquor does not exonerate him from the consequences of his unlawful acts. It is settled law that voluntary intoxication is never an excuse for crime.

(Sec. 22, Pen. Code; *People* v. *Burkhart,* 211 Cal. 726, 730, 731 [297 Pac. 11].) ■ The weight to be accorded to evidence of intoxication, and whether such intoxication precluded the accused from forming a specific intention to kill and murder, which intent is a necessary element in murder in the first degree, are matters essentially for the determination of the trier of the facts. (*People* v. *Murphy,* 221 Cal. 37 [32 Pac. (2d) 635]; *People* v. *Yeager,* 194 Cal. 452, 474 [229 Pac. 40].) ■ The evidence offered by the defense does not show that appellant, by reason of the use of intoxicants, was so disordered mentally at the time of attack on the deceased as to preclude the resultant killing from being of that "wilful, deliberate, and premeditated" character designated in section 189 of the Penal Code as murder in the first degree. The jury might very reasonably conclude that appellant was not so inebriated as to be unable to appreciate the character and gravity of his deliberate and wrongful acts.

■ We have not been favored with briefs in this cause; when the cause was called, pursuant to notice, for argument at the May, 1934, calendar counsel for appellant was not in attendance at court. The matter was put over one day and the clerk directed to notify counsel to appear. When the cause was again called on May 2d counsel was given ten days within which to prepare and file his brief, the People to reply within ten days, and the cause to then stand submitted. Though the time has long since expired, no brief has been filed on behalf of appellant and no reply has been received to a letter directed by the clerk to appellant's counsel on June 1st, in which the absence of the brief was mentioned and a query propounded "whether there is any reason why the cause should not be submitted without briefs at the present time". No showing to the contrary having been made the cause was submitted on June 11th and is now before us for disposition.

The evidence so unmistakably points to the appellant as the perpetrator of an unjustified and deliberate murder that we experience no hesitancy in affirming the judgment on the record as it now stands. The record is singularly free of error. In fact, the objections to the introduction of evidence were comparatively few in number and were properly disposed of by the court below. The instructions were

full and correct in their exposition of the law. Counsel for both sides conducted themselves with decorum and the record is destitute of anything approximating prejudicial error.

The judgment and the order denying a new trial are, and each is, therefore, affirmed.

Curtis, J., Preston, J., Shenk, J., Langdon, J., and Seawell, J., concurred.