**·BISHOP v. UNITED STATES.**
**No. 7288.**

United States Court of Appeals for the District of Columbia.

Decided Oct. 23, 1939.

---

Ross O'Donoghue, of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., and Cecil R. Heflin, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and VINSON, Associate Justices.

VINSON, Associate Justice.

This is an appeal from a conviction of murder in the first degree. Several persons testified before the jury that they had seen appellant beat his wife to death with a hammer in Pension Park in the city of Washington. It would serve no useful purpose to comment upon the evidence, which fully supported the verdict of the jury.

Appellant urges that the court erred: (1) in refusing certain prayers offered by him, (2) in its charge that his voluntary intoxication could not reduce the crime from second degree murder to voluntary manslaughter, or warrant an acquittal, (3) in its comment upon the type of crime, (4) in its definition of malice and reasonable doubt, (5) in the charge respecting motive and contradictory statements of witnesses.

■ There were several prayers offered by the appellant which were granted by the court. At the close of its charge to the jury, the trial court asked counsel if there was anything left uncovered. Counsel for appellant suggested that the court read the prayers. The court replied that his charge had included substantially everything in these prayers, but that if counsel should suggest any omitted point he would be glad to instruct the jury concerning it. Counsel thereupon acquiesced in the understanding that the charge embraced all points contained in the prayers and took no exception to the court's charge theretofore given.

However, as this is a capital case, we have painstakingly examined the charge in order that all of appellant's rights may be protected. Kinard v. United States, 68 App. D.C. 250, 96 F.2d 522; Meadows v. United States, 65 App.D.C. 275, 82 F.2d 881. We find that the substance of the prayers granted was "substantially and fairly covered by the general charge of the court." McAffee v. United States, 70 App.D.C. 142, 105 F.2d 21, 32, decided March 28, 1939; Aldridge v. United States, 60 App.D.C. 45, 46, 47 F.2d 407.

■ Several prayers offered by appellant were refused. We have examined these and uphold the district court in this respect. Counsel for the appellant in his brief contends that the court erred in failing to give one prayer requested, namely: "The jury are instructed that if the defendant was so intoxicated that he could not entertain the specific purpose required by the statute to constitute murder in the first degree or murder in the second degree, he would not be guilty of either and should be acquitted."

While, as we have said, the foregoing prayer was denied, the court granted it after it was amended to read as follows: "The jury are instructed that if the defendant was so intoxicated that he could not entertain the specific purpose required by the statute to constitute murder in the first degree, he would not be guilty of murder in the first degree."

A comparison of the prayer as presented with the amended form, and with the charge as it covers the point shows clearly the crux of appellant's case. He contends, first, that voluntary intoxication may negative the specific intent to kill, or the deliberation and premeditation necessary to constitute first degree murder, and, second, that it may also negative the malice aforethought necessary for second degree murder, and even be sufficient to acquit the defendant of all degrees of homicide. The court accepted the first contention and so charged the jury, but refused the second.

The court charged the jury that if they found that appellant struck the fatal blows, and at the time thereof, was so intoxicated that he could not form the purpose and intent to kill, he would not be guilty of murder in the first degree; and, further, that if the appellant formed the purpose and intent, but, if at the time of the killing, was so intoxicated that he could not deliberate and premeditate upon such purpose and intent, then he would not be guilty of murder

in the first degree, but would be guilty of murder in the second degree, unless there was sufficient provocation and sudden passion, as to cause a sober man to become so aroused as to kill, which, if shown, would reduce the crime to manslaughter. We append in the margin the portions of the charge pertaining to the intoxication of the appellant, as it related to the degree of the crimes included in the indictment.[1]

[1] "Now, I shall instruct you as a matter of law that drunkenness is not an excuse for crime; you will please bear that in mind through your deliberation, that drunkenness is not an excuse for crime, but in all cases where the law requires that there be a specific intent to do a particular thing, as in the case of murder in the first degree where there must be an actual intent to kill, it does become necessary for you to inquire as to the state of mind with which the defendant acts, and his drunkenness or sobriety is a matter for consideration in making any inquiry, and you will notice that you do not consider the question of drunkenness for the purpose of excusing the defendant; you will consider the drunkenness, if it existed, for the purpose of ascertaining whether or not he was able to form an intent and deliberate and premeditate over it. The degree of the offense depends upon the question, whether the killing was willful, deliberate, and premeditated, and upon that question it is proper for you to consider evidence of drunkenness in order to determine whether the defendant's mind was capable of that deliberation and premeditation which is necessary to amount to murder in the first degree.

"If you find that this defendant Bishop at the time of striking the fatal blows was intoxicated to such an extent that he could not form the purpose or intent to kill and that he was so intoxicated that he could not deliberate and premeditate over the intent to kill, then he would not be guilty of murder in the first degree."

\* \* \* \* \* \* \*

"Now, of course, a drinking man may be able to form an intent to kill; he may be able to deliberate and premeditate, even though his mind may be inflamed to some extent by liquor. \* \* \* if he still has the ability to form an intent to kill and premeditated and deliberated upon it, then the offense is murder in the first degree, if you find of course that he actually did have the intent to kill and did deliberate and premeditate upon it.

"Now, the state of his drunkenness at that time is a question of fact for you to determine. If you find that he was so drunk that he did not or could not form an intent to kill, or that he formed an intent to kill but could not deliberate and premeditate upon it, then he would not be guilty of murder in the first degree but he would be guilty of murder in the second degree, unless you find such facts existed as would reduce the offense to manslaughter. So, except as to his ability to form the intent to kill or to deliberate and premeditate over such intent, he is to be treated, even though you find him intoxicated, as though he was a sober person, that is, except as to that one offense of murder in the first degree, the fact that he may have been drunk is of no importance and not to be considered by you. A drunken man is presumed to understand the consequences of his acts; so that if you find this defendant inflicted these fatal blows upon Mrs. Bishop, you will find him guilty of murder in the first or second degree, according to your finding of the state of his mind at that time, and of course, if you find present all the elements necessary to constitute murder in the first degree, unless you think that the offense was manslaughter.

"Now, manslaughter is the unlawful killing of a human being without malice aforethought. It occurs when the homicide is committed at the time of mutual combat or when it is committed in passion or hot blood caused by adequate provocation. In other words, there must exist, in order to reduce the offense from murder to manslaughter, there must be shown ample provocation and sudden passion, and both of these things must exist at the time the fatal blow is struck.

"Now, when I say 'sudden passion' I mean to include rage, resentment, anger, terror, and fear; so when I use the expression 'sudden rage, anger, or passion', I include all of those.

"Now, provocation in order to be sufficient to reduce the offense of murder to manslaughter must be adequate, must be such as might naturally induce a reasonable man in the anger of the moment to commit the deed; it must be such provocation as would have like effect upon the mind of a reasonable or average man, causing him to lose self-control.

"In addition to the great provocation there must be passion and hot blood caused by that provocation.

"Now, as to both of those rules as to provocation and passion, the rule which you will apply is the rule you would ap-

Thus the court refused to carry out the request of the prayer as originally submitted and refused to charge that intoxication would negative the "specific purpose" required by the statute to constitute murder in the second degree or that such intoxication would warrant an acquittal. Error is assigned to the refusal of the court to so charge, and in addition, error is assigned to the standard of sobriety contained in the charge relating to voluntary manslaughter. We are of the opinion that in each instance the court followed the law.

 Under the District of Columbia statute,[2] a homicide committed purposely and with deliberate and premeditated malice is murder in the first degree.[3] A homicide committed with malice aforethought, without deliberation and premeditation, is murder in the second degree. "Malice aforethought" may be shown expressly, or may be "implied" from the commission of the act itself.[4] Although distinction is made in the severity of punishment for the degrees of murder, the statute embodies the substance of murder as it was known to the common law.[5]

 Intoxication at common law was no defense to the crime of murder.[6] It could neither justify an acquittal, nor reduce common law murder to manslaughter. From an early day to this hour, the law has declared that intoxication is not an excuse for the commission of a crime. While it has long been recognized that intoxication per se is no defense to the fact of guilt, the stated condition of a defendant's mind at the time of the killing in respect of its ability to form the intent to kill, or if formed to deliberate and premeditate thereupon, is now a proper subject for consideration, inquiry, and determination by the jury. Thus, voluntary intoxication will not excuse murder, but it may negative the ability of the defendant to form the specific intent to kill, or the deliberation and premeditation necessary to constitute first degree murder, in which event there is a reduction to second degree murder.[7]

The charge of the court upon the voluntary intoxication of appellant in respect to murder in the first degree, murder in the second degree, and manslaughter, was clearly and fairly given—conscientiously so. However, appellant maintains that the defense of voluntary intoxication goes further than the reduction from first degree murder to murder in the second degree, and that the defendant's voluntary intoxication negatived the malice aforethought required to constitute second degree murder under our statute, thereby reducing second degree murder to voluntary manslaughter, or— as is evidenced by the prayer under discus-

---

ply to a sober man. It must be such provocation which would arouse a reasonable, sober man. If the provocation aroused the defendant simply because he was intoxicated, and would not arouse a sober man, it does not reduce the offense to manslaughter because when you come to consider this question of manslaughter the defendant is to be governed by the same law which would govern a sober person."

[2] Tit. 6 sec. 21, D.C.Code (1929) provides:

"*Murder in the first degree* * * *. —Whoever, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate any offense punishable by imprisonment in the penitentiary, kills another, is guilty of murder in the first degree.

* * * * * * *

"*Murder in second degree.*—Whoever with malice aforethought * * * * kills another is guilty of murder in the second degree."

[3] Jordon v. United States, 66 App.D. C. 309, 87 F.2d 64.

[4] Sabens v. United States, 40 App.D. C. 440; Marcus v. United States, 66 App.D.C. 298, 86 F.2d 854.

[5] See Hill v. United States, 22 App.D. C. 395; Hamilton v. United States, 26 App.D.C. 382; Burge v. United States, 26 App.D.C. 524.

[6] Hopt v. Utah, 104 U.S. 631, 26 L.Ed. 873.

[7] Pirtle v. State, 9 Hump., Tenn., 663, 670; Haile v. State, 11 Hump., Tenn., 154; Willis v. Commonwealth, 32 Gratt. 929, 73 Va. 929; Johnson v. Commonwealth, 135 Va. 524, 115 S.E. 673, 30 A.L.R. 755; State v. Robinson, 20 W. Va. 713, 43 Am.Rep. 799; State v. Weaver, 35 Or. 415, 58 P. 109; State v. Aragon, 35 N.M. 198, 292 P. 225; Commonwealth v. Detweiler, 229 Pa. 304, 78 A. 271; People v. Lami, 1 Cal. 2d 497, 36 P.2d 192; State v. Kupis, 7 W.W.Harr. 27, 37 Del. 27, 179 A. 640; Commonwealth v. Soaris, 275 Mass. 291, 175 N.E. 491; State v. Brigance, 31 N. M. 436, 246 P. 897; People v. Koerber, 244 N.Y. 147, 155 N.E. 79; State v. Ross, 193 N.C. 25, 136 S.E. 193.

sion—warranting an acquittal. His contention is met in clear pronouncements from early authorities to the present day. Voluntary intoxication may not reduce murder to voluntary manslaughter, nor permit an acquittal of murder.[8] In Pirtle v. State, supra note 7, it is said: "As between the two offences of murder in the second degree, and manslaughter, the drunkenness of the offender can form no legitimate matter of inquiry; the killing being voluntary, the offence is necessarily murder in the second degree * * *." In Willis v. Commonwealth, supra note 7, it is said: "Voluntary immediate drunkenness is not admissible to disprove malice, or to reduce the offence to manslaughter," and this doctrine is approved in Little v. Commonwealth, 163 Va. 1020, 175 S.E. 767.

Appellant refers us to Smith v. United States, 50 App.D.C. 208, 269 F. 860, as being in apparent conflict with this holding. That case but impliedly passed upon this point. There was an indictment for second degree murder and a prayer requested which instructed the jury that intoxication would negative the malice aforethought necessary to constitute murder in the second degree, thereby reducing the crime to voluntary manslaughter. The requested prayer was refused, but the trial court so substantially charged the jury. The charge, as given, was more favorable to the defendant than the law contemplates. We held that the requested prayer on intoxication was covered by the charge given, and affirmed solely upon that point. There was no discussion of the underlying principles and no authorities were cited, nor was it necessary in that case. The court found no error prejudicial to appellant and so affirmed. But if there be implication that the charge as there given is a correct statement of the law, it must be and is expressly overruled. Indeed, the able counsel for the appellant herein cites no authority in contravention of the rule to which we must adhere in this case.

 The charge of the court that "the defendant was to be considered as a 'sober man', in determining whether or not he was guilty of manslaughter" is assigned as error. The full charge in respect of manslaughter is set forth in the margin.[9] The crime of manslaughter occurs when the killing is done in "heat of passion" engendered by adequate provocation. To constitute this crime it is not required to show that the killing was done purposely, deliberately, premeditatedly, or with malice aforethought. It is only necessary to show that the killing was committed in "heat of passion" upon sufficient provocation. The test of sufficiency of such provocation is that which would cause an ordinary man, a reasonable man, or an average man, to become so aroused. Such a man can only mean a "sober man", and the provocation must be sufficient to create "heat of passion" in a reasonable, sober man. The court so charged, saying that the provocation for the killing to be in "heat of passion" must be "adequate, must be such as might naturally induce a reasonable man in the anger of the moment to commit the deed; it must be such provocation as would have like effect upon the mind of an reasonable or average man, causing him to lose self-control. In addition to the great provocation there must be passion and hot blood caused by that provocation. Now, as to both of those rules as to provocation and passion, the rule which you will apply is the rule you would apply to a sober man. It must be such provocation which would arouse a reasonable, sober man. If the provocation aroused the defendant simply because he was intoxicated, and would not arouse a sober man, it does not reduce the offense to manslaughter because when you come to consider this question of manslaughter the defendant is to be governed by the same law which would govern a sober person."

In Pirtle v. State, supra note 7, it is stated: "* * * The killing being voluntary, the offence is necessarily murder in the second degree, unless the provocation were of such a character as would at common law constitute it manslaughter, and for which latter offence a drunken man is equally responsible as a sober one." In State v. Aragon, supra note 7, appears the following language [35 N.M. 198, 292 P. 227]: "We understand the argument to be that provoking facts and circumstances which might leave a sober man cool would engender 'heat of passion' in an intoxicated person. That may be so, but, as drunkenness does not excuse homicide, so by the same token it may not be available as a factor contributing to heat of passion."

 If a defendant is intoxicated, there is no requirement that provocation for "heat

[8] Commonwealth v. Detweiler; Haile v. State; Johnson v. Commonwealth; State v. Aragon; State v. Robinson; State v. Weaver; Commonwealth v. Soaris, all supra.

[9] See footnote 1.

of passion" be greater than that which would arouse a reasonable, sober man to act. Certainly, if there be intoxication, a lesser provocation than that which would create "heat of passion" in a reasonable, sober man cannot be allowed, otherwise, a premium would be granted for voluntary intoxication. The standard of the provocation that may create the "heat of passion" reducing murder to manslaughter is the same for all men, whether drunk or sober. We, therefore, conclude that the court correctly defined manslaughter and the proper standard to be applied when intoxication is pleaded as a defense.

■ Appellant contends that the following portion of the court's charge was incorrect and highly prejudicial to him, exceeding all proper comment. The Court states in the opening of the charge:

"A human being has been killed in a manner that is shocking and brutal. This defendant has been charged with the killing. Now, it is for you to say whether or not he did it, and if so, what degree of guilt attaches to the act. You should decide the matter solely on your judgment; you should not be influenced in any way by sympathy for the dead or prejudice because of the manner in which the act was committed.

"If you think I have any view of the guilt or innocence of the defendant you will please disregard that. I may comment upon the evidence, but if I do it is for the purpose of explaining to you the several theories of the law with respect to the different statements of fact that you may find from the evidence."

It is appellant's contention that the reference to the killing as being "shocking and brutal" necessarily prejudiced his rights. We are not in accord with this contention. We think that the court was well within its privilege to comment upon the facts, and that its characterization of the homicide did not prejudice the legal rights of appellant. The appellant's wife was killed with a hammer. She was struck repeated blows. Her head was badly crushed. She was dragged about 30 or 40 feet by the hair of her head to a point in the park where appellant testified he had left the hammer, and there sustained the deadly blows at the hands of appellant. Immediately thereafter on the scene, the appellant said: "That's the way to fix them." These facts were testified to by eye witnesses, and were not denied. While the details of the killing, without any material contradictions, show that a shocking and brutal homicide had

been committed, even so it was for the jury to decide the matter solely on judgment, without sympathy for the deceased or without prejudice to the appellant because of the manner in which the act was committed. The court so instructed them. In our opinion, this phase of the instruction, taken as a whole, cannot be complained of by the appellant, but rather was favorable to his cause. See Wilson v. United States, App. D.C., 107 F.2d 253, decided September 25, 1939; Cf. Hopt v. Utah, 110 U.S. 574, 582, 4 S.Ct. 202, 28 L.Ed. 262; Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321.

■ It is further contended by appellant that the lower court improperly defined "malice" and "reasonable doubt." The definition of malice is substantially that which received the sanction of this court in Mc-Affee v. United States, supra. The definition of reasonable doubt given by the court is substantially that which we approved in Egan v. United States, 52 App.D.C. 384, 287 F. 958. Reasonable doubt is a doubt arising from the evidence, or from a lack of evidence, after consideration of all the evidence. It is not a vague, speculative, imaginary something, but just such a doubt as would cause reasonable men to hesitate to act upon it in matters of importance to themselves. Posey v. State, 18 Ala.App. 583, 93 So. 272, 273. We think the charge, both as to malice and reasonable doubt, correctly informed the jury.

■ The remaining contentions of appellant are that he was prejudiced by the charge of the court concerning motive and contradictory statements by witnesses. The record shows that the government introduced evidence tending to show motive, Mc-Uin v. United States, 17 App.D.C. 323, 330; Murray v. United States, 53 App.D.C. 119, 122, 288 F. 1008, and that the court's charge was a proper one. Evidence was also introduced showing contradictions by witnesses, including the appellant himself. The court's charge thereupon was in conformity with Reagan v. United States, 157 U.S. 301, 305, 15 S.Ct. 610, 39 L.Ed. 709. Therefore, these assignments must fail.

The other assignments of error, as well as errors urged for the first time in the brief for appellant, have received our painstaking examination. After careful consideration of the whole charge, we are constrained to hold that the instructions were clear, complete and fair. The conduct of the trial was free from prejudicial error.

Affirmed.