# District of Columbia
# Court of Appeals

**No. 14-CF-1065**

JORIDA DAVIDSON,

Appellant,



FILED

MAY - 5 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.                                    **CF1-18988-10**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE:  GLICKMAN, FISHER and EASTERLY, *Associate Judges*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel.  On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the appellant's conviction is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated:  May 5, 2016.

Opinion by Associate Judge John R. Fisher.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CF-1065

JORIDA DAVIDSON, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 5/5/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF1-18988-10)

(Hon. Lynn Leibovitz, Trial Judge)

(Argued April 5, 2016                                    Decided May 5, 2016)

*Thomas T. Heslep* for appellant.

*Karen P. Seifert*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *Michael C. Liebman*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN, FISHER, and EASTERLY, *Associate Judges*.

FISHER, *Associate Judge*: Appellant Jorida Davidson challenges her voluntary manslaughter conviction, arguing primarily that the trial court erred by denying her request for a jury instruction on voluntary intoxication. We affirm.

## I.    Background

We briefly recite the facts relevant to the issues now before us.[1]  Appellant, who had been socializing with friends and consumed at least three glasses of wine and champagne, was driving home in her sport utility vehicle when she hit and killed Kiela Ryan.  Ms. Ryan was exiting the rear driver's side door of a car that was parallel parked on the right side of Connecticut Avenue, near Dupont Circle.  The evidence at trial, viewed favorably to the government, showed that appellant was driving erratically, making unsafe lane changes, speeding, and driving too close to the parked cars.  Appellant did not slow, stop, or honk before or after hitting Ms. Ryan with such force that she was propelled ten feet forward, onto the back of the car parked in front, ultimately landing on the ground between the two cars.

The collision took place at approximately 1:30 a.m.  A witness followed appellant from the scene on his bicycle and wrote down her license plate number.  Around 2:30 a.m., police discovered appellant slumped over and asleep in the

---

[1]    The case before us is an appeal from a conviction for voluntary manslaughter that occurred after we considered and rejected appellant's argument that a second trial was barred by the Double Jeopardy Clause. *Davidson v. United States*, 48 A.3d 194 (D.C. 2012).

driver's seat of her vehicle, parked in her assigned spot in the garage underneath her condominium building. She smelled of alcohol and was holding the keys in her hand. The police performed standard field sobriety tests at the police station, and appellant showed signs of intoxication. Appellant refused to submit to a breathalyzer test.

Ms. Davidson did not testify. In this trial, she was charged only with voluntary manslaughter, for causing Ms. Ryan's death by acting "with a conscious disregard of an extreme risk of death or serious bodily injury to another." The judge used the same language to instruct the jury on the elements of manslaughter.

## II.    Analysis

For more than a century, this jurisdiction has recognized that voluntary intoxication may preclude formation of the premeditation and deliberation necessary for a first-degree murder conviction. *Bishop v. United States*, 107 F.2d 297, 301 (D.C. Cir. 1939); *Harris v. United States*, 8 App. D.C. 20, 26 (1896).[2] However, it is equally well-established that voluntary intoxication is *not* a defense

---

[2] Under *M.A.P. v. Ryan*, 285 A.2d 310 (D.C. 1971), cases decided by the United States Court of Appeals for the District of Columbia Circuit (and its predecessors) prior to February 1, 1971, are part of the case law of this court.

to second-degree murder or voluntary manslaughter. In *Bishop*, a leading case discussing intoxication as a defense to homicide, the court rejected the appellant's contention that "voluntary intoxication may . . . be sufficient to acquit the defendant of all degrees of homicide." 107 F.2d at 299. In doing so, it approved the trial court's charge distinguishing first-degree murder ("If you find that he was so drunk that he did not or could not form an intent to kill, or that he formed an intent to kill but could not deliberate and premeditate upon it, then he would not be guilty of murder in the first degree . . . .") from second-degree murder and manslaughter ("[E]xcept as to that one offense of murder in the first degree, the fact that he may have been drunk is of no importance and not to be considered by you."). *Id.* at 300 n.1, 301.

Relying on a long line of authority, the *Bishop* court stated, unequivocally, that "[v]oluntary intoxication may not reduce murder to voluntary manslaughter, nor permit an acquittal of murder," meaning that a defendant may be drunk enough to reduce his conviction from first- to second-degree murder, but he may not use his voluntary intoxication to diminish the offense further, to manslaughter, or seek acquittal on that basis. *See* 107 F.2d at 301-03.[3] With respect to manslaughter, the

---

[3] Even when the defense is legally available, a defendant must present evidence of "incapacitating intoxication" before the instruction will be given. *See,*

(continued…)

court endorsed the view that "a drunken man is equally responsible as a sober one." *Id.* at 302 (internal quotation marks omitted).

Moreover, in a case in which a drunk driver was convicted of manslaughter for causing the death of one victim and second-degree murder for killing a second victim, the D.C. Circuit said: "It would be a sad reflection on justice and a menace to society to hold that, because [the defendant] had chosen to get stupidly drunk, he should escape the punishment of the law." *Nestlerode v. United States*, 122 F.2d 56, 60 (D.C. Cir. 1941). The defendant's intoxication "will not reduce the grade of the offense from second degree murder to manslaughter[,] [m]uch less will the appellant be excused from all criminal responsibility." *Id.* (citations omitted). Likewise, in *King v. United States*, 372 F.2d 383 (D.C. Cir. 1967), the court said clearly that "the rule that negatives voluntary intoxication as a defense to crimes . . . like manslaughter in effect holds men responsible for their fateful drinking, without regard to the extent of control at the moment of homicide." *Id.* at 388.

---

(…continued)
*e.g.*, *Bell v. United States*, 950 A.2d 56, 65 (D.C. 2008). For the sake of argument, we will assume that appellant would be able to establish the factual predicate for an intoxication instruction.

Although appellant now argues otherwise, *Comber v. United States*, 584 A.2d 26 (D.C. 1990) (en banc) (discussing the mental states required for second-degree murder and manslaughter), did not transform our longstanding law to suddenly recognize voluntary intoxication as a defense to second-degree murder or manslaughter. We already rebuffed this argument in *Wheeler v. United States*, 832 A.2d 1271 (D.C. 2003): "*Comber* could not plausibly have intended its discussion of homicide to have so dramatic an effect on the law of homicide and intoxication, in a case where no issue of intoxication . . . was presented. . . . [T]he trial judge correctly refused to instruct on intoxication as a defense to second-degree murder . . . ." *Id.* at 1276.

Appellant asserts that voluntary manslaughter should be treated differently than second-degree murder. However, *Wheeler*'s reasoning applied equally to manslaughter. Under *Comber*'s definition of the two crimes, "[t]he four mental states recognized as malicious for purposes of second-degree murder exist in manslaughter, as well." *Wheeler*, 832 A.2d at 1275 (alteration in original) (quoting *Comber*, 584 A.2d at 52). Thus, if Wheeler's argument were accepted, "a jury finding that intoxication negated [defendant's] ability to form any of the mental states for murder logically would reach the same conclusion as to manslaughter"—thus acquitting a defendant of both charges. *Id.* at 1275-76. But *Comber* clearly

did not work such a radical change in "the law of homicide and intoxication." *Id.* at 1276. Consistent with *Bishop*'s refusal to allow a reduction to manslaughter or "permit an acquittal of murder" based on voluntary intoxication, 107 F.2d at 302, the *Wheeler* court drew the line at first-degree murder. 832 A.2d at 1273, 1276.

In light of our precedents, and the sound policy on which they are based, we follow the *Wheeler* court in rejecting the arguments appellant advances here. Voluntary intoxication is not a defense to voluntary manslaughter.[4] Appellant's conviction is

*Affirmed.*

---

[4] Appellant presents two additional claims of error, neither of which has merit. Viewed in the light most favorable to the government, the evidence was sufficient for a reasonable jury to find that appellant had "conscious[ly] disregard[ed] . . . an extreme risk of death or serious bodily injury to another person." The trial court did not abuse its discretion by precluding appellant, in closing argument, from comparing the evidence presented at this trial to that presented in the first trial. *See Haley v. United States*, 799 A.2d 1201, 1207 (D.C. 2002) (a court abuses its discretion in limiting closing argument only if it "prevents defense counsel from making a point essential to the defense" (internal quotation marks omitted)).