John C. RIVETT, Appellant,

v.

STATE of Alaska, Appellee.

No. 3097.

Supreme Court of Alaska.

May 5, 1978.

Terry C. Aglietti, Mitchel J. Schapira, Edgar Paul Boyko & Associates, Anchorage, for appellant.

Steven J. Call, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

BURKE, Justice.

In this appeal, John Rivett challenges his conviction following a jury trial for assault with a dangerous weapon. We reverse on the ground that the trial court erred in failing to instruct the jury on the lesser-included offense of assault and battery.

Rivett was accused of striking one Chester Webber in the forehead with metal knuckles in the course of an argument between Rivett and Webber in Rivett's room at a pipeline construction camp near Livengood, Alaska. At trial, there was little dispute that the defendant had struck Webber; rather, the main issue was whether Rivett had used a dangerous weapon, *i. e.* the metal knuckles, in striking his victim. There was conflicting evidence on this point. The metal knuckles themselves were never found and therefore could not be introduced as direct evidence. Several witnesses for the state, who had been present at the incident, testified that metal knuckles were in the room at the time of the fight and that Rivett had used them when

he struck Webber. A medical technician, who treated Webber after the fight, further testified that in his opinion the wound on Webber's forehead was not caused by a bare fist but by a foreign object of some kind. Rivett, however, testified that he had never owned metal knuckles and that he had not possessed nor used any during the fight in question. He stated that he had been drinking heavily and did not remember hitting Webber but admitted that it was possible that he had done so. Another defense witness testified that he had not seen metal knuckles in the room or in use at the time of the incident.

■ Alaska R.Crim.P. 31(c) provides:

*Conviction of Lesser Offense.* The defendant may be found guilty of an offense necessarily included in the offense charged, or of an attempt to commit either the offense charged or the offense necessarily included therein if the attempt is an offense. When it appears that the defendant has committed a crime, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of those degrees only.

An offense is necessarily included in the offense charged "where one could not have committed the offense charged without also having committed the offense of lesser magnitude," *i. e.*, where it is impossible to commit the greater without first having committed the lesser. *Jennings v. State,* 404 P.2d 652, 655 (Alaska 1965). *See also Mahle v. State,* 392 P.2d 19 (Alaska 1964); *James v. United States,* 16 Alaska 513, 238 F.2d 681 (9th Cir. 1956).

■ AS 11.15.220, the statute under which Rivett was charged,[1] makes it a felony for a person armed with a dangerous weapon to assault another with the weapon. At the time of Rivett's trial, AS 11.15.230

---

1. At the time of this case, AS 11.15.220 provided:

    *Assault with dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than six

    months, or by imprisonment in jail for not more than one year nor less than one month, or by a fine of not more than $1,000 nor less than $100.

    The penalty portion of this statute was amended by § 2 ch. 139 S.L.A. 1976.

provided[2] that "[a] person not armed with a dangerous weapon, who unlawfully assaults or threatens another in a menacing manner, or unlawfully strikes or wounds another" is guilty of the lesser offense of assault and battery, a misdemeanor. Clearly one cannot assault another with a dangerous weapon such as metal knuckles without also committing the lesser form of assault. It follows, therefore, that the offense of simple assault or assault and battery was necessarily included in the greater offense of assault with a dangerous weapon charged in this case. Since the evidence at trial raised an issue as to whether the defendant used a dangerous weapon in committing the alleged assault, under the ordinary rule he would be entitled to an instruction on both assault with a dangerous weapon and the lesser-included offense of assault and battery.

The state contends, however, that a lesser-included instruction was properly denied in the instant case for two reasons. First, it argues that whereas it is an element of AS 11.15.220 that one be "armed with a dangerous weapon," it was an element of the former AS 11.15.230 that one be "not armed with a dangerous weapon." Thus it contends that the two offenses were mutually exclusive and that assault and battery is not a lesser-included offense of assault with a dangerous weapon.

The state's reasoning is unsound. Despite the wording of the assault and battery statute, it cannot be said that it was an element of that offense that the defendant be unarmed. Were that an element, the state would have to prove beyond a reasonable doubt, in every prosecution for misdemeanor assault and battery, that the defendant was unarmed at the time of committing the crime. Such a reading of the statute is unreasonable. Surely the legislature could not have intended to grant immunity to those who commit a criminal assault while armed with a dangerous weapon, so long as they do not use the weapon to strike their victims.[3]

We believe that by using the language "not armed with a dangerous weapon," in AS 11.15.230, the legislature simply meant that when one commits an assault without *using* a dangerous weapon to do so he is guilty only of the lesser form of assault. Thus, where the assault consists of a simple punch in the nose, by means of a bare fist, the offender can be found guilty of a violation of AS 11.15.230, misdemeanor assault, even though at the time of the offense he may have worn a pistol on his hip. Under the state's construction of AS 11.15.230, which we consider untenable, that violation would not be possible.

■ The state also contends that a lesser-included instruction was properly denied here because the defendant made an untimely request for such an instruction. It appears from the record that the trial judge had directed that counsel submit proposed instructions not later than Wednesday of the trial but that defense counsel did not request an assault and battery instruction until Thursday, shortly before final argument.

Because of the sharply conflicting evidence at trial, as to whether Rivett used a dangerous weapon, we hold that in this case the trial court's failure to instruct the jury on the lesser-included offense of assault and battery was error.[4] Although Rivett's re-

---

2. AS 11.15.230 was amended by § 4 ch. 139 S.L.A. 1976. The amendment deleted the words "not armed with a dangerous weapon" and made one other change not relevant here.

3. Compare these statutes with former AS 11.-15.190 which at the time of this case provided:

    *Assault while armed.* A person who assaults, or assaults and beats another with a cowhide, whip, stick or like thing, having at the time in his possession a pistol, dirk or other deadly weapon, with intent to intimi-

date and prevent the other person from resisting or defending himself, is punishable by imprisonment in the penitentiary for not more than 10 years not [sic] less than one year.

    This statute was amended by § 1 ch. 139 S.L.A. 1976. The present version is similar to the above statute but speaks in more general terms.

4. Although we believe the trial court's failure to give a lesser-included offense instruction was reversible error in the instant case, we do

quest for the instruction was technically untimely, the delay was minimal and Rivett clearly stated his objection to the failure to give that instruction before the jury retired to begin its deliberations. We believe that the importance of that instruction, under the circumstances, far outweighed the benefits to be gained by strict enforcement of the court's order concerning the submission of proposed jury instructions.

Although we reverse on the above ground, we will briefly comment on several of the other issues raised by appellant in order to avoid another appeal on the same issues if appellant is again convicted after retrial.[5]

■ Appellant contends that the statute under which he was convicted, former AS 11.15.220,[6] is unconstitutional because it makes the same conduct punishable as either a felony or a misdemeanor, depending on the court where the charge is brought or the sentence imposed. We recently decided this issue contrary to appellant's position in *Larson v. State*, 569 P.2d 783 (Alaska 1977), an opinion published after the briefs in the instant case were filed. There we held that any offense having a potential for punishment by imprisonment for more than one year is a felony offense under the provision of AS 11.75.030, which states that "a felony is a crime which *is or may be* punishable by imprisonment for a period exceeding one year." *Id.* at 784. (Emphasis in original). Under Alaska law, regardless of the punish-

ment actually imposed, one convicted of assault with a dangerous weapon under the former AS 11.15.220 has committed a felony and thus the statute is not unconstitutional.

■ Appellant also contends that the trial court erred in giving its own reasonable doubt instruction rather than the one he requested.[7] Citing our recent decision in *Davenport v. State*, 519 P.2d 452, 456 (Alaska 1974), appellant asserts that the instruction given was so "grossly deficient" that reversal is required. We do not agree. It is true, as appellant points out, that we have stated that the preferred definition of reasonable doubt is one which speaks in terms of a "doubt [which] would cause prudent men to hesitate before acting in matters of importance to themselves." *McCurry v. State*, 538 P.2d 100, 106 n.17 (Alaska 1975). *Accord, Davenport, supra; Avery v. State*, 514 P.2d 637, 643 (Alaska 1973). However, in each of the three cases just cited the trial court had instructed that proof beyond a reasonable doubt meant proof to a "moral certainty." In *McCurry* we said:

In the past we have criticized this type of reasonable doubt instruction. *Davenport v. State, [supra]*, and *Avery v. State, [supra]*. In both cases we stated our preference for a reasonable doubt definition in terms of 'a doubt [which] would cause prudent men to hesitate before acting in matters of importance to themselves.' *See Holland v. United States*, 348 U.S.

---

not mean to imply that such a failure will necessarily require reversal in all cases.

**5.** We do not reach appellant's sentence appeal nor another minor point raised in his brief.

**6.** *See* footnote 1, *supra*.

**7.** The trial court gave the following reasonable doubt instruction:

The burden of proving every fact material and necessary to a conviction by competent evidence beyond a reasonable doubt is on the State and does not at any time or under any circumstance shift from the State. It is not sufficient for the State to prove any material fact by guess, speculation or conjecture, or suspicion, or by a preponderance of the evidence, or only to the extent that the evidence pertaining to such fact is evenly balanced, or

uncertain, or is as consistent with innocence as with guilt.

On the other hand, it is not necessary that the State should prove such facts absolutely in such manner as to leave no room for any doubt whatever. Very few things in the whole domain of human knowledge are susceptible of absolute proof. We can have a moral certainty or a reasonable certainty, which may vary in degree, but rarely an absolute certainty.

Reasonable doubt means in law just what the words imply—a doubt founded upon some good reason. It must not arise from a merciful disposition or a kindly, sympathetic feeling, or a desire to avoid performing a disagreeable duty. If it arises, it must be either from the evidence produced or from the lack of evidence.

121, 140, 75 S.Ct. 127, 99 L.Ed. 150, 167 (1954).

538 P.2d at 106 n.17.

In *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150, 167 (1954), cited in all three of our cases, the Supreme Court of the United States stated its own preference for such a definition over one defining reasonable doubt as "the kind of doubt . . . which you folks in the more serious and important affairs of your own lives might be willing to act upon," citing *Bishop v. United States*, 71 App.D.C. 132, 107 F.2d 297 (1939). However, neither *Holland* nor our own decisions establish the "preferred" instruction as an invariable standard. In each of those cases the defendant's conviction was affirmed, despite the instructions given. When read carefully, they establish nothing more than that instruction would have been preferable to the one actually given by the trial court, not that the instructions given were in fact erroneous.[8] Thus, in *Davenport* we said:

> We agree that this formulation is preferable to the somewhat vague 'moral certainty.' While we do not wish to be read as setting down an invariable standard form of instruction, we will in the future require greater clarity in instructions defining reasonable doubt. Finding no error in the instructions, we affirm the judgment below.[9]

In *Bishop v. United States, supra*, the decision from which the United States Supreme Court borrowed the language of the "preferred" instruction found in *Holland*, the United States Court of Appeals for the District of Columbia said:

> Reasonable doubt is a doubt arising from the evidence, or from a lack of evidence, after consideration of all the evidence. It is not a vague, speculative, imaginary

something, but just such a doubt as would cause reasonable men to hesitate to act upon it in matters of importance to themselves.

107 F.2d at 303. The court in *Bishop* relied upon yet an earlier case, *Posey v. State*, 18 Ala.App. 583, 93 So. 272 (1922), in which the trial court had given the following instruction:

> A reasonable doubt has often been attempted to be defined, but to my mind the words themselves are the best definition.
>
> . . . They mean what they say, a reasonable doubt arising from the evidence or from a lack of evidence, after considering all of the evidence.
>
> . . . It is not a vague, speculative, imaginary something, but just such a doubt as would cause you, as reasonable men, to hesitate to act upon it in matters of importance to you.

In *Posey*, the Alabama Court of Appeals rejected the defendant's argument that such instruction was erroneous, saying: "Considered as a whole, the charge of the court in this respect is free from error." 93 So. at 273.

The instruction given by the trial court in the case at bar defined reasonable doubt in terms similar to those used in *Bishop* and *Posey*. Taken as a whole, we believe that that instruction accurately conveyed the concept of reasonable doubt to the jury.

■ One final issue raised by appellant concerns the lower court's admission of expert testimony at trial. One of the state's witnesses was Lawrence Bowen, a medical technician who had treated Webber's wound and who gave opinion testimony as to the cause of the wound. Bowen had about 27 years medical experience, most of it in the military. He testified that he had

---

8. *Holland*, in fact, suggests that the better approach would be to not define the term at all. Quoting its earlier decision in *Miles v. United States*, 103 U.S. 304, 312, 26 L.Ed. 481, 484 (1880), the Court said "Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." 348 U.S. at 140, 75 S.Ct. at 138, 99 L.Ed. at 167. Thus, a strong argument can be made that *Holland's* "preferred" instruction was really

nothing more than an attempt by the Court to select the better of two alternatives, neither of which was particularly desirable. It seems clear, from the language quoted above, that the Court's first choice was to give no definition at all. *See also Posey v. State*, 18 Ala.App. 583, 93 So. 272 (1922).

9. 519 P.2d at 456 (Footnote omitted).

treated thousands of laceration wounds of every type and that in many instances doctors had requested him to treat patients' wounds because of his expertise in that area. In addition to practical experience, he also had extensive academic training in medical and related fields. Rivett objected to Bowen's testimony at trial. Now, he renews that objection, asserting that Bowen was not qualified to give opinion testimony and in the alternative that the jury could not receive appreciable help from Bowen on the subject of the cause of Webber's wounds. *See Crawford v. Rogers*, 406 P.2d 189, 192 (Alaska 1965).

In *D.H. v. State*, 561 P.2d 294, 297 (Alaska 1977), we stated that "[t]he decision to admit opinion testimony into evidence lies within the sound discretion of the trial judge and is reviewable only for abuse of discretion." Rivett has provided us with no reason why Bowen was not qualified as a witness, nor why Bowen's testimony could not appreciably assist the jury on the possible cause of Webber's wounds. Moreover, in our view, Bowen was clearly qualified to give opinion testimony under our past decisions regarding expert witnesses. *See e. g. Lewis v. State*, 469 P.2d 689 (Alaska 1970). Accordingly, we hold that the trial court did not abuse its discretion in admitting the opinion testimony of Lawrence Bowen.

REVERSED and REMANDED for a new trial.