Steven BENDLE, Appellant,

v.

STATE of Alaska, Appellee.

No. 2859.

Supreme Court of Alaska.

Sept. 8, 1978.

David C. Backstrom, Deputy Public Defender, Fairbanks, Brian C. Shortell, Public Defender, Anchorage, Robert Adelman, Anchorage, of counsel, for appellant.

Natalie K. Finn, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

Steven L. Bendle appeals his conviction of first degree murder [1] and sentence of life imprisonment.

The events giving rise to Bendle's conviction took place in April of 1975. At that time Bendle, then 20 years old, and a companion, William Rust, decided to hitchhike from Anchorage to California with their two girlfriends, both of whom were juveniles. In order to get provisions for the trip, Bendle and his companions broke into his parents' house while they were away and took food, blankets, backpacks, and other supplies they thought they might need. Among the items taken was a .32 caliber semi-automatic pistol. On April 21, 1975, the four individuals began hitchhiking toward the Canadian border, arriving the next day in Tok, Alaska. By that time they had spent most of the money they had brought with them and were apparently becoming discouraged with their means of

---

1. AS 11.15.010 provides:

    *First degree murder.* A person who, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate, rape, arson, robbery, or burglary kills another, is guilty of murder in the first degree, and shall be sentenced to imprisonment for not less than 20 years to life.

travel to California. The four made their way to a local campground where they began to discuss the feasibility of robbing someone to obtain money and transportation. They spent the night at the campground and, the next morning, Bendle and Rust went to a local grocery store where they stole some food. Shortly after they returned, a sixty-year old man named Arthur Graham drove into the campground in a camper truck. After Graham had parked his truck, one of the girls approached him and asked for some water. She then returned to the group and reported that the man appeared to be alone. As a result, it was decided that he would be the robbery victim. Bendle and Rust walked over the camper and began talking with Graham, discussing such things as weather and road conditions in Canada, the amount of traffic on the highway, and how to cross the border into Canada without going through customs. Although Bendle had the pistol with him at the time, he decided not to rob Graham then because of the possibility that Graham might have a gun in his camper. When Graham began preparing his lunch, Bendle and Rust left him to rejoin the girls and further discuss how the robbery might best be accomplished.

After a while it appeared that Graham had finished his lunch and was preparing to do some engine work on his truck. At that point, Bendle and Rust went over to Graham and offered to help with the repairs. Graham accepted the offer and asked Rust to lean into the engine compartment to hold a bolt while he crawled underneath the truck to do the needed work. During this time Bendle stood next to the truck. He pulled out the pistol a number of times but quickly concealed it whenever Graham turned to look at or speak to him. Rust testified that while he was leaning into the engine compartment he suddenly heard a shot and, as he jumped back, heard Graham exclaim "Oh my God." Within a minute or two it appeared that Graham had died from the gunshot wound.

Bendle and Rust then ran back to the two girls and instructed them to remain there while they disposed of the body. At that time, Bendle also allegedly told the others that although he had aimed at the victim's heart, he had missed his mark because the gunsight was out of adjustment. After talking with the girls, the men returned to the scene of the shooting, dragged the body across the frozen river and concealed it in the brush beyond. The girls then joined the men at the camper and began to clean up evidence of the crime. In order to avoid leaving fingerprints at the scene, Bendle instructed the members of the group to wear gloves. While the two men completed engine repairs on the truck, the girls attempted to dispose of the blood-stained evidence which they found on the scene. During this time, an envelope was discovered in the glove compartment of the truck which contained approximately $600.00 in cash.

After completing their work, the four got into Graham's truck and drove to Fairbanks. Using the money found in the truck, Bendle purchased four airline tickets to Seattle and paid for food and a motel room for the group that night. The following day, he and his companions flew to Seattle where they rented a car and drove to California. There they were apprehended and returned to Alaska to face charges stemming from the incident at the Tok campground.

At his subsequent trial for the robbery and first degree murder of Arthur Graham, Bendle claimed that although the killing was committed in the act of robbery, it had been accidental. At the close of the evidence, defense counsel requested that the court submit an instruction to the jury on second degree murder. He also asked the court to find that the two girls were accomplices as a matter of law and to instruct the jury in accord with that finding. These requests were denied. The jury was then given instructions on the elements of first degree murder under two separate theories: premeditated murder and murder committed during the commission of a felony. Bendle was subsequently found guilty of robbery and first degree murder. In returning these verdicts, the jury answered a special interrogatory indicating the jurors'

belief that the killing was premeditated, deliberate and done with malice, as well as purposely done in the commission of a robbery. As a result, Bendle was sentenced to life imprisonment for the first degree murder and a concurrent term of fifteen years for the armed robbery.

■ Bendle's first claim on appeal is that the trial court committed reversible error by failing to instruct the jury on the elements of second degree murder.[2] He contends that once the trial court submitted the instruction on premeditated murder to the jury, it was obligated to then submit an instruction on second degree murder as a lesser-included offense. The crux of his argument is that the jury might have entertained a reasonable doubt as to whether the killing was either premeditated or committed in the perpetration of a robbery. If so, even if the killing were found to be intentional, Bendle could only be convicted of a second degree murder. He claims, therefore, that the failure to instruct the jury on this charge foreclosed an important option that the jury should have had in rendering its decision.

In our opinion the trial court did err in failing to submit the requested instruction. Rule 30(b), Alaska R.Crim.P., requires the trial court to "instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict." Certainly, there was some evidence tending to show that the killing was neither premeditated nor committed in perpetration of a robbery, even if done coincidental thereto. Such being the case, Bendle was entitled to the requested instruction. *Rivett v. State*, 578 P.2d 946 (Alaska 1978).

We do not believe, however, that this error requires reversal of Bendle's conviction.

■ Our decision is based on an examination of the special interrogatory that was returned by the jury. It indicates that the jurors all believed Bendle's act of killing Graham was purposely done in the commission of a robbery, thus rejecting his claim that the killing was accidental. Once the jury reached this conclusion, coupled with its finding that the act was committed in the perpetration of the robbery, it was required to find Bendle guilty of first degree felony murder.[3] Only if the jury had been unable to find that the intentional killing was done in the course of committing the robbery would the option of second degree murder have become important, for then the jury would have had to decide whether the intentional killing was, or was not, premeditated, and therefore first or second degree murder.

■ During closing argument, the defense was free to argue that the killing, whether accidental or not, was not done in the commission of the robbery. Had the jury sided with the defense on this issue, but still convicted Bendle of premeditated first degree murder, we would have no choice but to reverse his conviction for the failure to instruct the jury on second degree murder. *See Rivett v. State, supra.* Here, however, the special interrogatory indicates that the jury found the intentional killing to have been committed in the perpetration of the robbery. This alone was sufficient to convict Bendle of first degree murder regardless of whether or not the jury determined the act to have been premeditated.[4]

2. AS 11.15.030 provides:

   *Second degree murder.* Except as provided in §§ 10 and 20 of this chapter, a person who purposely and maliciously kills another is guilty of murder in the second degree, and shall be sentenced to imprisonment for a term of not less than 15 years to life.

3. In *Gray v. State*, 463 P.2d 897, 906 (Alaska 1970), this court stated:

   [F]elony murder under Alaska law is a purposeful killing committed in the perpetration of certain felonies. Such a purposeful killing if not done in the perpetration of one of the enumerated felonies, may constitute second degree murder. Such a killing if done in the perpetration of a felony but not with specific intent to kill, may be manslaughter. Thus depending on the facts of a given case both second degree murder and manslaughter could be lesser included offenses to first degree felony murder.

4. In *Gray v. State, supra,* this court noted the problems which can arise when the state relies on several theories of the commission of a single crime. One such problem was stated as follows:

We find, therefore, that although the trial court erred in failing to give the jury an instruction on second degree murder, the error became harmless once the jury found that the intentional killing was in the perpetration of the robbery. *See Christie v. State,* 580 P.2d 310 (Alaska 1978). This court will not reverse a conviction for such harmless error. *See Love v. State,* 457 P.2d 622, 631 (Alaska 1969). We do take this opportunity, however, to caution the trial courts that normally a second degree murder instruction should be given as a matter of course to juries hearing a first degree murder case. This will avoid any possibility that such juries might be foreclosed from an alternative verdict which would be justified by certain possible findings of fact.[5]

▪ As his second point of appeal, appellant asserts that the trial court committed reversible error by failing to instruct the jury that the two juvenile girls who were with Bendle at the Tok campground and who testified at his trial were his accomplices as a matter of law. Such an instruction would have required the trial court to inform the jury that no conviction could be based on such testimony unless it was corroborated by other evidence tending to connect the defendant to the commission of the crime. AS 12.45.020.[6]

In *Evans v. State,* 550 P.2d 830 (Alaska 1976), Justice Rabinowitz, writing for the court, stated that in order to find one an accomplice to a crime,

[I]t is essential that he in some way ' . . . associate himself with the [criminal] venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' Mere presence at the scene of the crime is not in itself enough to make out complicity. Moreover, neither knowledge that a crime is being committed nor the concealment of that knowledge by itself makes a person an accomplice. Complicity is established only if there is conduct voluntarily undertaken for the purpose of participating or assisting in the completion of a crime.

550 P.2d at 841. [footnotes omitted].

Our review of the record leads us to conclude that there was conflicting evidence at trial as to whether the two girls actually helped plan, perpetrate, or even encourage the two men to commit the robbery or the murder. Their active involvement came only after the robbery and mur-

---

If the jury is only asked for one general verdict, then on appeal there is no way to tell upon which theory the jury reached its verdict. In such a case an error relating to either [theory] would void the entire verdict. 463 P.2d at 911. The court found a solution to this problem in the use of special interrogatories such as that employed in the present case, stating:

We believe that only one conviction of murder should be allowed for the killing of one man. Although there are several ways of committing first degree murder, it is still only one crime; and only one sentence can be imposed. We believe it is sound to allow multiple theories to be presented to the jury and not to force the jury to choose between them. However, this effect can be achieved by the use of special findings, rather than multiple convictions for one crime. . . . The jury can be asked to enter findings which would show whether the murder was a felony-murder, or a premeditated one or both.

*Id.* Thus, when a jury returns a special interrogatory indicating its belief that a defendant is guilty of a crime on more than one theory, as in this case, then even though error may be found as to one theory, the general verdict will be upheld if an alternative theory of conviction is sound.

5. This statement should not be read as indicating any belief that it is necessary to allow jurors an opportunity to return a compromise verdict. In *Christie v. State, supra,* we refused to find that the failure to give a lesser-included offense instruction was not harmless error simply because such an instruction would have allowed the jury to compromise on a middle ground, saying: "We do not believe that juries should reach verdicts by compromise, and we will not give our approval to such procedures." 580 P.2d 320, n. 38.

6. AS 12.45.020 states:

*Conviction on testimony of accomplice and corroboration.* A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission.

der had taken place. Therefore it would not have been proper for the trial judge to find that they were accomplices to Bendle's crimes as a matter of law. Hence, the court below properly submitted this issue to the jury with instructions that if it determined the girls were accomplices, their testimony had to be corroborated to support a conviction.[7]

▆▆ Finally, Bendle appeals his sentence of life imprisonment for first degree murder.[8] The rule in this jurisdiction is that sentences will be disturbed by this court only upon a finding that the trial judge was clearly mistaken in his sentencing decision. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974). Given the facts of the case and Bendle's prior record, which includes two felony convictions, we are unable to say that the sentencing judge clearly made a mistake in imposing the sentence he did.

AFFIRMED.

---

7. The court did instruct the jury that Rust was an accomplice as a matter of law.

8. AS 12.55.120(a) provides in part:
   A sentence of imprisonment lawfully imposed by the superior court for a term or for aggregate terms exceeding one year may be appealed to the supreme court by the defendant on the ground that the sentence is excessive.